IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

STEWART WILSON, DEBRA WILSON,
and JOEL WILSON                                                          PLAINTIFFS


v.                              Case No. 09-CV-1047


EL DORADO SCHOOL DISTRICT NO. 15;
BOB WATSON, Individually, and in his
Official Capacity as Superintendent;
LARRY WALTERS, Individually, and in
his Official Capacity as Principal of
El Dorado High School                                                    DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgement filed by Defendants. (ECF No. 22).

Plaintiffs Stewart Wilson, Debra Wilson, and their son, Joel Wilson, have filed a response. (ECF No.

30). Defendants have replied. (ECF No. 33). The Court finds the matter ripe for consideration.

## BACKGROUND

Plaintiff Joel Wilson attended El Dorado High School from August 2004 until his graduation

in May 2008. On April 13, 2007, Joel attended a mandatory function in the school's gymnasium,

where he purchased from another student what he believed to be two hydrocodone pills. He ingested

the pills shortly thereafter and, on the following morning, began experiencing seizure-like symptoms.

Joel's parents, Stewart and Debra, took him to a hospital in El Dorado where he continued displaying

symptoms. He was then transferred to Arkansas Children's Hospital. Doctors there found that Joel

had not ingested hydrocodone, but 20 mg of Haldol, an antipsychotic medication. Following the

incident, he was diagnosed with depression and prescribed antidepressant medication.

Joel returned to school later that month, and his parents informed the El Dorado School

District ("EDSD") of the incident. Upon returning to school, Plaintiffs allege that Joel was subjected to an unsafe environment, harassment, and bullying. Stewart and Debra further allege that Joel was labeled a "snitch" as a result of the ordeal and was the victim of threats and vandalism. On June 29, 2007, the Wilsons met with Bob Watson, Superintendent of EDSD, to discuss the situation and request that Joel be transferred to Parkers Chapel School District. Watson placed their transfer request on the EDSD Board of Education's meeting agenda. School officials noted that because Joel Wilson is white, and El Dorado High School is predominantly black, his transfer to predominantly white Parkers Chapel High School would constitute an illegal transfer under Arkansas law. The EDSD Board of Education held a meeting on July 9, 2007, in which Watson summarized the Plaintiffs' situation with El Dorado High School and recommended that the Board grant a transfer. Though unclear from the record, the Board decided to either table the transfer request or deny it outright. The result, in any event, was effectively a denial of Plaintiffs' request. Plaintiffs thereafter filed separate special education due process complaints in an attempt to effect a transfer to Parkers Chapel High School. The complaints were dismissed with prejudice.

On November 2, 2009, Plaintiffs Stewart, Debra, and Joel Wilson filed a Complaint in the Western District of Arkansas, naming as defendants the El Dorado School District, Superintendent Bob Watson, and El Dorado High School Principal Larry Walters. Plaintiffs asserted four claims—first, that Defendants violated their First and Fourteenth Amendment rights under color of state law by affirmatively placing Joel Wilson in a position of danger (state-created danger); second, that Defendants denied Plaintiffs' right to due process under color of state law in establishing an unconstitutional school custom of tolerating drug sales and distribution on EDSD grounds; third, that Defendants violated § 504 of the Rehabilitation Act of 1973 by unlawfully discriminating against Joel Wilson based on his attention deficit hyperactivity disorder (ADHD),

depression, and anxiety disorder; and fourth, that Defendants violated Title II of the Americans with

Disabilities Act by unlawfully discriminating against Joel Wilson on the basis of his disability.

Following discovery, Plaintiffs elected to abandon the latter two claims concerning disability

discrimination. (ECF No. 31 at 8). Only the first two claims under 42 U.S.C. § 1983 remain.

Plaintiffs have named both Walters and Watson in their individual and official capacities. EDSD is

named as a municipal defendant pursuant to *Monell v. Department of Social Services*, 436 U.S. 658

(1978). Plaintiffs request damages and injunctive relief.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established. The Federal Rules of

Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as
> a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court

has issued the following guidelines for trial courts to determine whether this standard has been

satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a
> need for trial-whether, in other words, there are genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826

F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management

Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986). A fact is material only when its resolution affects

the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A dispute is genuine if

the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at

3

252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256.

<u>DISCUSSION</u>

Plaintiffs assert their claims under 42 U.S.C. § 1983. Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. § 1983. Therefore, a § 1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003) (quoting *Shrum v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). As noted, Plaintiffs contend that Defendants committed constitutional violations by affirmatively placing Joel Wilson in a position of danger and by maintaining a municipal custom or policy that harbored an unsafe environment and ignored drug sale and distribution at El Dorado High School.

Plaintiffs name Walters and Watson in both their individual and official capacities. Because a § 1983 lawsuit against a local officer in his or her official capacity essentially acts as a lawsuit against the employing municipality itself, the Court will treat Plaintiffs' official capacity claims

4

against Walters and Watson as one and the same with their claim against EDSD. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). The Court will first discuss Plaintiffs' claims against Walters and Watson in their individual capacities before addressing their assertions against EDSD.

I. State Created Danger Claims as to Walters and Watson

Plaintiffs claim that Defendants Walters and Watson placed Joel Wilson in a position of danger by failing to investigate and stop the illegal sale of drugs at El Dorado High School and by failing to effectuate a transfer to Parkers Chapel School District. (ECF No. 30 at 3). Plaintiffs allege that Joel Wilson consequently suffered physical and emotional injury from the ingested drugs and subsequent harassment at school. (ECF No. 1 at 12). They contend that the acts and omissions of both Walters and Watson, as school administrators, led to Joel Wilson's injures. *Id.*

Absent certain limited circumstances, a state is under no constitutional duty to prevent private harm to its citizens. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989) ("[W]e conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). The United States Court of Appeals for the Eighth Circuit has recognized two exceptions to the *DeShaney* rule— first, when the state "has limited the individuals' ability to care for themselves[,]" and second, when the state "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (citing *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988)).

Plaintiffs allege that Defendants' actions fall under the latter, "state-created danger" exception. (ECF No. 30 at 3). To establish constitutional liability under a state-created danger theory, Plaintiffs must prove that 1) they were members of a limited, precisely definable group, 2)

Defendants' conduct put them at significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to Defendants, 4) Defendants acted recklessly in conscious disregard of the risk, and 5) in total, Defendants' conduct shocks the conscience. *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (citing *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004)). Mere negligence does not constitute conscience-shocking conduct. *Hart*, 432 F.3d at 805 (citing *Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000)).

The Court has reviewed the evidence in the light most favorable to Plaintiffs and concludes that a genuine dispute is lacking as to all required elements of a state created danger claim. In particular, the deposition and affidavit testimony before the Court fail to evidence a triable question as to whether Defendants, on the whole, demonstrated the conscience-shocking conduct required to maintain a substantive due process claim. Actionable claims under a state created danger theory must involve a "'level of . . . abuse of power' . . . 'so "brutal" and "offensive" that [they do] not comport with traditional ideas of fair play and decency.'" *Avalos v. City of Glenwood*, 382 F.3d 792, 800 (8th Cir. 2004) (quoting *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000)). Here, the record reflects that El Dorado High School maintained policies against bullying and the sale of drugs. The bullying policy required students to report any instances of threats or harassment to school officials. Anti-bullying notices were posted throughout the school, and both Debra and Joel Wilson were aware of these policies. The school further maintained a practice of conducting random searches of students' lockers for evidence of drugs, guns, and other prohibited items. The school also regularly employed the use of a drug dog. Teachers routinely monitored the restrooms, cafeteria, courtyard, and hallways. A video surveillance system monitored the El Dorado High School campus during the time of Joel Wilson's attendance.

Plaintiffs contend that Principal Walters endangered Joel Wilson by identifying him to the

alleged drug dealer. (ECF No. 30 at 5). Plaintiffs' contention, however, is nothing more than a bare allegation without supporting citation to the record. The record makes clear that upon being informed of the drug sale, Walters immediately investigated the matter and made sure not to reveal Joel Wilson's identity:

> When the Wilsons identified the student who allegedly sold the drug Haldol to Joel Wilson on April 17, 2007, the school resource officer and I questioned the student, searched him, searched his locker, and searched him again at the beginning of the following school year. We did not find any drugs or other contraband. The student had no previous disciplinary record, and he denied involvement with drugs and specifically denied selling Haldol to any student. *During my questioning of this student, I did not identify Joel Wilson as a source of information*.

(ECF No. 22, Ex. 4, Affidavit of Larry Walters) (emphasis added).

Plaintiffs further allege that Defendants' failure to immediately expel the student violated their own policy and further placed Joel Wilson in danger. (ECF No. 30 at 6). School rules, however, require corroborating witness testimony in complaints of drug dealing. Here, because Walters was unable to obtain corroborating evidence from a source other than Joel Wilson, he could not pursue disciplinary action against the accused. (ECF No. 30, Ex. 1 at 4). The school's policy mandates only that a student who sells drugs will be referred to the school board for "possible expulsion." (ECF No. 33, Ex. 2 at 13). In his deposition, Watson indicated that normal protocol would be suspension for a first time offender if the school had sufficiently concluded that the accused had sold drugs. *Id.* By its terms, the school's policy appears to award discretion to the school board about the implementation of punishment. Expulsion is reserved merely as an option. Plaintiff's argument is unfounded.

Furthermore, Joel Wilson provided deposition testimony that, following the Haldol incident, no one ever physically touched him or made any threatening comments to him directly while on

school grounds. (ECF No. 22, Ex. 3 at 15, 19). The record suggests that the only time Joel Wilson

ever reported instances of possible bullying, a teacher escorted him to class. Joel Wilson made no

other complaints to school officials:

> Q.      So when you came back to school in late April 2007, there were
> only about two weeks left in the school year; right?
>
> A.      Yes.
>
> Q.      Are you saying that everything, the threats, the kids standing by
> your truck, Mr. Farley walking you to class, all of that happened in those
> two weeks?
>
> A.      Yes, and the first of senior year.
>
> Q.      Those are the only times: the last two weeks on your junior year
> and the beginning of your senior year?
>
> A.      Yes.
> . . .
>
> Q.      But still, the whole time, you only made the two reports to
> Farley; nobody touched you; and nobody said anything to you directly;
> right?
>
> A.      Right.
> . . .
>
> Q.      . . . [N]o one ever said anything directly to you at the school that
> was threatening; and no one ever touched you, physically, at school in
> any threatening or hostile way; correct?
>
> A.      All I remember, yeah.

(ECF No. 22, Ex. 3 at 15, 18, 19).

Superintendent Watson twice called Principal Walters following the incident to inquire as

to whether other students were seen bullying or harassing Joel Wilson. (ECF No. 30, Ex. 1 at 5) Both

times Walters indicated that he had not personally seen any incidents and that Joel Wilson had not

reported any bullying or harassment. *Id.*

Plaintiffs contend that Defendants' failure to transfer Joel Wilson to Parkers Chapel violated his due process rights and placed him in further danger. (ECF No. 30 at 7). Defendants maintain that Arkansas law prohibits interdistrict transfers when, as here, the percentage of enrollment of the student's race in the nonresident district exceeds that of the resident district. (ECF No. 33 at 17-18). The Court agrees. Because EDSD is under a desegregation-related court order and Joel Wilson's transfer request would negatively affect the racial balance within the district, EDSD is generally prohibited from granting a transfer. *See* Ark. Code Ann. §§ 6-18-317; 6-18-317. Plaintiffs have not challenged the statutes' constitutionality, but do cite to *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007) as prohibiting the denial of interdistrict school transfers based on race. (ECF. No. 30 at 12). Watson expressly noted in deposition testimony a knowledge of the decision but indicated that counsel for EDSD advised him to continue following Arkansas law as it related to interdistrict transfers. (ECF No. 33, Ex. 2 at 6-7). Defendants maintain that the *Parents Involved* case was distinguishable from Plaintiffs' situation because, unlike the schools at issue in *Parents Involved,* EDSD remains under a desegregation order in which the obligation to remedy past intentional discrimination remains. (ECF No. 33 at 18-20). In the Court's view, Defendants applied the law as they reasonably understood it.

After reviewing the evidence in the light most favorable to Plaintiffs, the Court cannot say that, on the whole, a triable dispute exists as to whether Defendants' handling of Joel Wilson's situation was "so brutal and offensive" that it failed to "comport with traditional ideas of fair play and decency." *Avalos*, 382 F.3d at 800 (internal quotations omitted). Walters promptly responded to the incident by investigating the matter with a school resource officer. EDSD continued to maintain policies against drugs and bullying, and Joel Wilson knew of these policies and knew that

9

he was required to report harassment to school officials. As noted, the two times Joel Wilson did report incidents, a teacher responded by escorting him to class. Joel Wilson indicated that he made no further complaints about bullying on school grounds, and Principal Walters indicated to Superintendent Watson that he had not personally seen any harassing conduct. El Dorado High School further maintained security by employing a police officer on campus full-time; actively using teachers to monitor public areas; operating a video surveillance system; and randomly searching students' lockers for drugs and weapons. Moreover, the evidence shows that Defendants followed the law as they reasonably understood it in regards to denying illegal interdistrict transfers. In sum, the summary judgment record fails to evidence a genuine dispute as to whether Defendants engaged in conscience-shocking behavior under a state-created danger claim. Accordingly, Defendants motion for summary judgment on Plaintiffs' first claim for relief should be granted.

## II. Custom or Policy Claims Against EDSD and Individual Defendants in Their Official Capacities

Plaintiffs have also brought claims against EDSD, as well as Walters and Watson in their official capacities, alleging an unconstitutional municipal custom of tolerating illegal drug sales and harboring an unsafe environment. As noted, the "real party in interest in an official capacity suit is the governmental entity and not the named official." *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). An official capacity suit is therefore treated as a suit against the governmental entity. *Id.* Such an entity is responsible for a constitutional violation when a municipal custom or policy causes the violation. *See Stuach v. City of Columbia Heights*, 212 F.3d 425, 432 (8th Cir. 2000). To establish the existence of an unconstitutional municipal custom, Plaintiffs must show (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by EDSD employees, (2) deliberate indifference to or tacit authorization of such conduct by EDSD's policymaking officials after notice to the officials of that

10

misconduct, and (3) injury by acts pursuant to EDSD's custom. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).

Because the Court has determined that no triable dispute exists as to whether Walters and Watson committed a constitutional violation in Plaintiffs' underlying state-created danger theory, Plaintiffs have not met the first element required to bring suit against EDSD or Walters and Watson in their official capacities. Therefore, Defendants are entitled to summary judgment on Plaintiffs' second and final claim. *See Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 470 (8th Cir. 2010) (a plaintiff cannot maintain a claim against local government entity without an underlying constitutional violation).

<u>CONCLUSION</u>

Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be and hereby is **GRANTED**. A judgment of even date, consistent with the opinion, will be issued.

IT IS SO ORDERED, on this 30th day of January, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge

11